**SO ORDERED.**

**SIGNED this 01 day of November, 2011.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

JONATHON ROY BABSON,                                CASE NO. 11-00673-8-JRL
                                                    CHAPTER 7
    DEBTOR.

_____

### ORDER

This matter came before the court on the Bankruptcy Administrator's ("BA") motion to dismiss the debtor's case for abuse. A hearing was held on October 4, 2011 in Raleigh, North Carolina.

The debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on January 31, 2011. His debts are primarily consumer debts which includes $367,032.61 of secured debts and $124,100.76 of non-priority unsecured debt. The BA filed a statement of presumed abuse on March 14, 2011. On April 14, 2011, the BA filed a motion to dismiss for abuse, and the debtor filed a response on June 9, 2011. The debtor filed his amended chapter 7 statement of current monthly income and means-test calculation ("Official Form") on August 23, 2011.

The debtor works full-time in a position that requires him to frequently travel and

receives compensation in the form of a salary, bonus, and commission. The debtor also lives with his partner and does not have any dependents. At the hearing, the debtor testified that he and his partner pay expenses on two vehicles. The debtor pays all of the expenses associated with one vehicle that he uses solely for work. The debtor drove this vehicle almost 34,000 miles in 2010 for work. In addition the debtor pays approximately 40% of the second vehicle's operational expenses. Both the debtor and his partner's names are on the note and deed of trust securing their residence. The debtor claimed the full amount of the mortgage payment as an expense on his Official Form. However, the debtor testified that his partner contributes between $600.00 and $700.00 dollars per month toward the mortgage payment. The debtor did not include this contribution on his Official Form. The debtor also testified that his ordinary and necessary business expenses are higher than identified on the Official Form. Based on his 2010 tax return, his ordinary and necessary business expenses were $23,372.00 for the 2010 year. This amounts to an average of $1,947.67 per month.

## DISCUSSION

Pursuant to § 707(b)(1) of the Bankruptcy Code, "the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). The purpose of the Official Form is to determine whether a presumption of abuse arises pursuant § 707(b)(2). The Official Form shows the debtor's calculations as required by § 707(b)(2)(A), commonly referred to as the "means test." According to § 707(b)(2), if a debtor's means test shows an ability to repay some portion of his debts, then there is a presumption of abuse, and, absent special circumstances, the case must either be converted to chapter 13 or dismissed. 11 U.S.C. § 707(b)(2).

The starting point for the means test is the debtor's "current monthly income" as defined in § 101(10A). Section 101(10A)(B) provides that current monthly income "includes any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents," with certain specific exceptions not applicable here. 11 U.S.C. § 101(10A)(B). The BA argues that the debtor miscalculated his current monthly income. Specifically, the BA contends that the debtor's failure to include his partners' contributions to the mortgage and other household expenses, and his misstatement of his work bonuses and commissions improperly skews the debtor's gross monthly income, making it appear that he cannot repay his debt. The BA maintains that if his partner's contributions are included, the presumption of abuse would arise.

In <u>In re Epperson</u>, 409 B.R. 503, 508 (Bankr. Ariz. 2009), the court found that a roommate's monthly contribution to household expenses fell under the definition of the debtor's current monthly income because the contribution benefitted "the Debtor by decreasing the household expenses the Debtor would otherwise have to pay." Thus, the debtor had to include the roommate's contribution for his means test. Here, the debtor testified that his partner contributed between $600.00 and $700.00 per month toward the mortgage payment, which is a household expense. The debtor's bank statements indicate that the partner pays an average of $670.00 per month to the debtor. Clearly, the partner's contribution to the household expenses must be included in the debtor's current monthly income. At the hearing, the debtor testified that he received a commission from work at the end of each month. Based on his testimony, he did not miscalculate his gross receipts from his employer. Accordingly, the court will require the debtor to amend line 8 of the Official Form to account for the $670.00 paid by another person on a regular basis for the household expenses of the debtor. Furthermore, the debtor testified that he

3

pays 40% of the second vehicle's operational expenses. Based on his testimony, the line 22A value should be reduced by 60%. Therefore, line 22A should be amended to $95.60.

The debtor argues that he did not realize his full business liabilities until he completed review of his receipts and mileage for filing his 2010 tax return. The debtor cites In re Turner, 376 B.R. 370 (Bankr. N.H. 2007), for the proposition that the line 4(c) value should be based on the debtor's 2010 tax return. In Turner, the court found that the debtor traveled extensively for his job and was thus allowed to take a special circumstance deduction equal to his previous year tax return. 376 B.R. at 380–81. The debtor also relies on the Internal Revenue Service's administrative guide which provides guidance to taxpayers on how to compute a business mileage deduction for a federal tax return. See Internal Revenue Bulletin: 2009-51, Rev. Proc. 2009-54 (Dec. 21, 2009). In addition, the debtor testified that he incurs additional employee expenses by taking clients to lunch and dinner, and buying supplies for work. The debtor originally indicated under line 4(c) on the Official Form that his ordinary and necessary business expenses are $1,546.83 per month. The debtor's 2010 tax return indicates that his unreimbursed employee expenses were $23,372.00, equating to approximately $1,947.67 per month. The debtor further testified that these expenses were relatively constant throughout the year.

The BA contends that the debtor's ordinary and necessary business expenses deduction should be based on the actual expenses he incurred six months prior to filing for bankruptcy. The BA cites In re Hickman, No. 07-41199, 2008 Bankr. LEXIS 3253 (Bankr. W.D. Wash. June 27, 2008) in support. In Hickman, the debtor introduced into evidence two prior tax returns that he and his wife had previously filed to establish the cost of goods sold in his business for his ordinary and necessary business expense deduction. 2008 Bankr. LEXIS 3253 at *10–11. The debtor did not testify or provide any other evidence to establish that the debtor's tax return

4

correlated to the debtor's actual business expenses during the time period at issue in the case. Id. Thus the court used the debtor's bank statements to calculate the debtor's business expenses. Id. The BA maintains that the court should look to the debtor's bank statements in this case to calculate what the debtor actually expended towards his business expenses in the six months prior to filing for bankruptcy. Based on the debtor's bank statements for July 2010 through December 2010, the BA argues that the debtor's actual business expenses are substantially less than $1,546.83 per month. Therefore, the question is whether the debtor's deduction for ordinary and necessary business expenses should be based on his 2010 federal tax return or on his bank statements from the six months prior to filing for bankruptcy.

      The Internal Revenue Code allows an individual to deduct "all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a). However, the right to take this deduction "is tempered by the requirement that any amount claimed as a business expense must be substantiated, and taxpayers are required to maintain records sufficient therefor." Megibow v. C.I.R., 2004 WL 309153, at *11 (U.S. Tax Ct. Feb. 19, 2004). Pursuant to the Tax Code, taxpayers "may deduct an amount equal to either the business standard mileage rate times the number of business miles traveled or the actual costs (both fixed and variable) the taxpayer pays or incurs that are allocable to traveling those business miles." Internal Revenue Bulletin: 2009-51, Rev. Proc. 2009-54 § 5.02 (Dec. 21, 2009). The business standard mileage rate takes into account business vehicle expenses for an entire year. Notably the administrative guide states,

> A taxpayer computes a deduction using the business standard mileage rate on a yearly basis and in lieu of computing the fixed and variable costs of the automobile allocable to business purposes[.] . . . Items such as depreciation or lease payments, maintenance and repairs, tires, gasoline (including all taxes thereon), oil, insurance, and license and registration fees are included in fixed and variable costs for this

5

      purpose.

Id. at § 5.03.  In the debtor's view, this computation method for the business mileage deduction presents the most accurate depiction of the debtor's average monthly business vehicle expenses because it takes into account business expenses on the vehicle for an entire year.  The court held in Turner that the tax return was better evidence than the United States Trustee's exhibit, estimating the amount of money the debtor had spent on business vehicles in the six month period prior to filing for bankruptcy because the "tax return [provided] documentation for a full year rather than six months" and there were "no credibility issues with regard to the tax return[.]"  376 B.R. at 381.

      Based on the foregoing, the court finds that unlike the debtor's bank statements, the debtor's 2010 tax return takes into account all expenses relating to the debtor's business vehicle and is thus more indicative of the debtor's unreimbursed employee expenses than his bank statements.  This case is also distinguishable from Hickman because the debtor in this case credibly substantiated his tax return by testifying.  The debtor's 2010 tax return presents a more accurate picture of the debtor's monthly ordinary and necessary business expenses.  The efficient administration of bankruptcy cases will be enhanced if the time-honored method declared by the Internal Revenue Service to compute unreimbursed business expenses is recognized in the means test calculations.  Therefore line 4(c) should be amended to $1,947.67.

      Taking the findings addressed above into consideration, the debtor's currently monthly income is $3,867.25 and the total of the allowed deductions is $3,689.04.  By subtracting the allowed deductions from the current monthly income, the court determines that the debtor's monthly disposable income is $178.21 and his 60-month disposable income is $10,692.60.  Therefore, the court finds a presumption of abuse does not arise pursuant to § 707(b)(1) since the

debtor's 60-month disposable income does not exceed $31,025.19.[1]  Therefore, pursuant to section 707(b)(1), the BA's motion to dismiss is DENIED.

**END OF DOCUMENT**

---

[1] Pursuant to the Official Form the debtor's 60-month disposable income under § 707(b)(2) is greater than $7,025.00 but not more than $11,725.00.  The debtor must then fill in Part VI of the Official Form.  Under Part VI, the debtor's total non-priority unsecured debt is $124,100.76.  The debtor must then calculate the threshold debt payment amount by multiplying the total non-priority unsecured debt by .25, which in this case equals $31,025.19.